[No. 25101. Department Two. December 7, 1934.]

LAKESIDE COUNTRY DAY SCHOOL, *Appellant*, v. KING COUNTY *et al.*, *Respondents.*[1]

*Tanner & Garvin,* for appellant.

*Robert M. Burgunder, Arthur M. Hare,* and *David J. Williams,* for respondents.

GERAGHTY, J.—This action was brought by the appellant, Lakeside Country Day School, to set aside the tax levied by the respondent King county on its campus in the years 1931 and 1932. The appellant is organized under chapter 158, Laws of 1895, p. 400 (Rem. Rev. Stat., § 3872 [P. C. § 4619], *et seq.*), for the sole purpose of conducting a school for boys. The school is supported in part by gifts and an endowment, and

[1]Reported in 38 P. (2d) 264.

in part by tuition fees. The entire income is devoted to the purposes of the school, and it is open to persons upon equal terms.

The action involves the proper application of the fifth subdivision of § 7, chapter 130, Laws of 1925, Ex. Ses., p. 230 (Rem. Rev. Stat., § 11111), the pertinent part of which (the numbers in brackets being inserted by us for convenience in reference) follows:

"The following property, to the extent herein limited, shall be exempt from taxation: . . .

"Fifth: All property, real and personal, owned by any school or college in this state, supported in whole or in part by gifts, endowments or charity, the entire income of which said school or college, after paying the expenses thereof, is devoted to the purposes of such institution, and which is open to all persons upon equal terms: Provided, [1] That said property is used solely for educational purposes (or the revenue therefrom be devoted exclusively to the support and maintenance of such institution): And provided, further, [2] That the real property so exempt shall not exceed ten acres in extent, and shall be used exclusively for college or campus purposes: Except, however, That any school of collegiate grade and accredited by the state board of education shall be entitled to an exemption of not more than forty acres of real property used exclusively for said purposes, but no corporation shall be entitled to more than one such larger exemption, and where the college is under the direction or control of any religious denomination such larger exemption shall be allowed to one college only directed or controlled by such religious denomination: And provided, further, [3] That real property owned or controlled by such institution and leased or rented by them for the purpose of deriving revenue therefrom shall not be exempt from taxation under the provisions of this section: Provided, further, [4] That the annual income from such endowment is equal to or exceeds all incomes from tuitions received by said institutions. . . ."

590

In addition to the foregoing, the subdivision provides that the institution claiming exemption must file with the county assessor a sworn statement containing a list of the property claimed to be exempt and the total revenues of the institution, with the sources from which they were derived and the purposes to which they were applied.

The appellant filed with the assessor of King county its claim for exemption in the years 1931 and 1932, with the financial statement required by the statute. The assessor disallowed the claims, whereupon this action was brought.

At the trial, the prosecuting attorney representing the county admitted that, in view of the facts as they then appeared, the appellant was entitled to its claimed exemption for the year 1931. The court sustained the tax for the year 1932, and judgment was entered accordingly.

The prosecuting attorney reached his conclusion that the respondent was entitled to have the tax levied upon the campus for the year 1931 canceled by construing the word *endowment,* as used in the statute, to include *gifts* and *charity,* and since the financial statement of appellant for the year 1931 showed that its receipts from gifts, endowment and charity amounted to more than its receipts from tuition, it was within the terms of the exemption. For the year 1932, it appeared that the receipts from gifts, endowment and charity were less than those received from tuition, and therefore the respondent urged, and the trial court held, that, as to that year, the appellant was not entitled to exemption.

While the question is now moot, we may remark, in passing, that we do not wish to be committed to that view of the term *endowment.* The word, as generally used, implies a permanent fund, the earnings of which

are devoted to the support of the endowed institution, while the words *gift* and *charity* cover sums received more or less casually and intermittently for the current expenses of the institution. It is true, of course, that the endowment may accrue in the first instance as a gift, but manifestly what the statute here has in view is a permanent fund, the income, not the capital, of which is to be devoted to the payment of current expenses. *Appeal of Wagner Institute,* 116 Pa. 555, 11 Atl. 402.

It may be proper at this time also to say that, at the 1933 session of the legislature, § 7 was amended [Laws of 1933, p. 436, Rem. 1933 Sup., § 11111] by the deletion of the last proviso giving rise to the present controversy.

█ With respect to the immediate question in issue, the appellant's contention is that the words *such endowment* in the fourth proviso refer to the real property owned or controlled by an institution and leased or rented for the purpose of revenue as referred to in the third proviso. It seeks to sustain this contention by the citation of authorities to the effect that the operation of a proviso is usually and properly confined to the clause or provision immediately preceding. But in our opinion, the cases cited by appellant to sustain its position, when read in connection with the entire subdivision, lead to a contrary conclusion, because they clearly imply that the general rule will not control when the language of the statute indicates a contrary intention. For instance, appellant quotes from *State ex rel. Peck v. Anderson,* 92 Mont. 298, 13 P. (2d) 231:

"It is a rule of law as old as the law itself, that a relative clause shall be construed to relate to the nearest antecedent that will make sense."

Applying this rule to the fourth proviso, we cannot escape the conclusion that it relates back to the enact-

ing or exemption clause. To construe it any other way would not make sense. The rule applicable here, as we think, is stated in *Casco Co. v. Olympia*, 124 Wash. 218, 213 Pac. 915:

"The general rule that a proviso is deemed to apply only to the immediately preceding clauses or provisions in the section in which it is found is subject to many exceptions. It is always a question of legislative intent, and here we think it clearly appears from other provisions of the act from which the quoted section is taken that the legislative intent was to the contrary."

That the fifth subdivision as a whole is poorly drafted and inconsistent in its provisions, is apparent enough at a glance, but as we read them, there can be no question that all four of the provisos relate back to, and modify, the exemption clause. The introductory words to the several provisos clearly imply this. The first is introduced with the word "provided," the three succeeding with the words "provided, further." If the fourth modifies the third, then, by the same token, the third must modify the second, and the second the first. As a matter of fact, the third proviso was unnecessary, and must have been inserted out of an abundance of caution, because the second proviso limits the exempt real property to that used exclusively for college and campus purposes.

Read as a whole, there can be no doubt that the legislature intended to exempt real estate only to the extent limited for campus purposes; that is to say, not exceeding ten acres for ordinary schools, and forty acres for schools of collegiate grade. The construction contended for by appellant would not only exempt the campus, but any other real estate owned and held for revenue purposes, if the income therefrom be less than the income received from tuition. This construction is

wholly at variance with the general purpose of the statute.

The word *endowment,* as used in the statute, is manifestly intended to embrace all permanent funds held as an endowment for the production of revenue. That fund may be invested in personal property, such as bonds, mortgages and other securities, or in real estate. Therefore, when the statute required that the income from endowments should be equal to, or greater than, the income from tuition, it necessarily referred to the comprehensive word used in the exemption clause, rather than to the description of property of which the endowment might consist, referred to in the third proviso.

We may agree with the appellant that the law as here construed would militate against weak and struggling institutions, but the law was so made, and it is not for us to amend it, but for the legislature. The legislature did amend it, as we have seen, by deleting the obnoxious proviso. The amendment, however, was not retroactive in character, and it is not competent for us to make it so.

The judgment must be affirmed.

BEALS, C. J., BLAKE, TOLMAN, and HOLCOMB, JJ., concur.