## Eastern District Council of the Assemblies of God v. Zendt et al.

*Wallace M. Keely,* for petitioner.

*E. Arnold Forrest,* for respondents.

DANNEHOWER, J., August 21, 1941.—This petition is in the nature of an appeal from the action of the

county board for the assessment and revision of taxes, in refusing to entirely exempt the property of petitioner from taxation. From the testimony heard, admissions and exhibits, there are drawn the following

*Findings of fact*

1. Appellant was incorporated June 12, 1935, as a nonprofit corporation by the Court of Common Pleas of Montgomery County. The purposes of the corporation, as expressed in its constitutional prerogatives, are to promulgate the Gospel of Jesus Christ by all scriptural means, both at home and abroad; to promote Christian fellowship among its members; to establish assemblies for divine worship, and to develop them in general unity along the lines of their distinctive testimony.

2. The corporation is the owner in fee of a tract of land consisting of 47 acres, located in Marlborough Township, Montgomery County, Pa., and has been assessed, less exempted property, at $31,980.

3. The buildings on the grounds consist of two tabernacles, a cafeteria, a dining room, a pavilion, a dormitory, 74 cabins, and 115 cottages. The two tabernacles are actual places of religious worship. The cafeteria and dining room are open daily to serve meals to anyone who attends the meetings. The dining room is also used as a dormitory for the male students of the Eastern Bible Institute, hereinafter referred to, and is also used for classrooms. The pavilion has tables and chairs and is used as a place to eat by those persons who purchase their food in the cafeteria. The dormitory is used for classrooms and for chapel services, as well as for sleeping quarters for the female students of the Eastern Bible Institute. The cabins and cottages are leased at a small rental for living quarters to persons attending the camp meetings.

4. Since 1931, the corporation has held stated regular meetings on the grounds covering a period of about

four weeks each, in July and August of each year. These camp meetings are devoted to Bible teaching, gospel preaching, church work, and young people's work. The services are very much like the ordinary church services and are very largely attended, on weekdays by about one thousand, and on Sundays by as many as twenty-five hundred persons. For these services, preachers and guest speakers are employed.

5. The grounds and buildings are also occupied without cost by the Eastern Bible Institute, a divinity school affiliated with the Eastern District Council of the Assemblies of God. This school was started in 1938 to prepare students for simple ministry and for foreign mission work. The school is open to both men and women, 19 years of age or over. The students are not required to take any pledge in regard to what they are going to do after they leave school. At present about eighty students attend the school. The school has a faculty of eight and a staff of six. The charge for each student averages $5 per week, which charge covers tuition, room, food, laundry, etc. The school gives a three-year course, eight months in each year, and upon graduation the students receive diplomas showing that they have graduated from the Eastern Bible Institute. The daily classes begin at 8:45 a.m. and continue to 3:00 p.m. five days in each week. Religious services are held each weekday morning and on Sunday mornings. The charges assessed students do not meet the actual expenses of the school, so a certain amount of free-will offering is relied upon to cover expenses.

6. Of the land and buildings set forth in finding of fact no. 3, 47 acres of land are assessed at $50 an acre, or a total of $2,350; the cafeteria is assessed at $850; the dining room at $2,190; the dormitory at $5,700; 35 cabins at $40 each, or a total of $1,400; 39 cabins at $60 each, or a total of $2,340; and 115 cottages at $250 each, or a total of $17,400. The board for the assessment and revision of taxes has exempted the large

tabernacle assessed at $5,700 and the grove tabernacle assessed at $1,950, as actual places of religious worship. The board also exempted five acres at $50 an acre, or a total of $250, as land thereto annexed and necessary for the occupancy and enjoyment of the same.

7. The entire income and receipts of the corporation are used to defray the expenses of the camp meeting. No part of the income is used for profit.

8. This tract of land can be conveniently divided into five areas: (1) The tabernacle area, about 5 acres; (2) cottage area, 7 acres; (3) institute buildings and grounds, 9 acres; (4) parking area, 7 acres; (5) school and recreation area, 19 acres.

9. The total area of the parking and recreation area is 7 acres plus 19 acres, or a total of 26 acres. Twenty acres of these two plots are necessary and are in actual use for parking and recreation.

10. Six acres of the parking and recreation plots are not in actual use and are not necessary at the present time for the purposes of the corporation.

11. All of the grounds and buildings, with the exception of the six acres not in actual use at the present time, are necessary and are being used for the purposes of the corporation.

From the foregoing facts, we arrive at the following

### Conclusions of law

1. The Eastern District Council of the Assemblies of God is an institution of purely public charity, and is, therefore, exempt from taxation, insofar as its grounds and buildings are necessary and in actual use for the immediate performance of the purposes of purely public charity.

2. All of the grounds and buildings, except six acres, should be exempt from taxation.

### Discussion

Article IX, sec. 1, of the Constitution of Pennsylvania specifically enumerates the property which may

be exempted, to wit: (*a*) Public property used for public purposes; (*b*) actual places of religious worship; (*c*) places of burial not used or held for private or corporate profit; (*d*) institutions of purely public charity; and (*e*) real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines. It is, of course, well settled that, when the Constitution enumerates the kinds of property that may be exempted from taxation, it by implication excludes all other taxable property.

The Constitution exempts nothing; it merely permits the legislature to exempt within the lines laid down for its guidance; and the claimant of exemption from taxation must show affirmative legislation in support of his claim, and the case must be clearly within it: Wagner Free Institute v. Philadelphia, 132 Pa. 612 (1890); Philadelphia v. Barber, 160 Pa. 123 (1894); Ivy Hill Cemetery Company's Appeal, 120 Pa. Superior Ct. 340 (1936). And a taxpayer claiming total exemption as a charitable institution has the burden of proof: Y. M. C. A. of Germantown v. Philadelphia, 323 Pa. 401 (1936).

The General County Assessment Law of May 22, 1933, P. L. 853, art. II, sec. 204, 72 PS §5020-204, passed to carry the constitutional provision into effect, provides:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

"(*a*) All churches, meeting-houses, or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same; . . .

"(*c*) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment

of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose".

It is contended that this corporation is exempt from taxation: First, because its property is a regular place of stated worship; secondly, because the corporation is a purely public charity; and thirdly, because it is an institution of learning. We are of the opinion that the corporation falls more directly under the head of a purely public charity, and on this ground the property which is actually used for the purposes of the corporation is exempt from taxation.

In Donohugh's Appeal, 86 Pa. 306 (1878), the Supreme Court early ruled that a purely public charity within the meaning of article IX, sec. 1, of the Constitution is not necessarily one solely controlled by the State, but extends to private charitable institutions which are not administered for any individual gain; and in Fire Insurance Patrol v. Boyd, 120 Pa. 624 (1888), it held that the true test of a public charity is the character of the objects sought to be attained, saying (p. 645) to bring the hearts of an indefinite number of persons " 'under the influences of education or religion' " was a proper object of public charity; and in White et al. v. Smith, 189 Pa. 222 (1899), it ruled that the mere fact of a public charity being under the control of those belonging to a particular religious denomination, so long as its ultimate object was to help an indefinite number of persons, without regard to their religious beliefs, made it none the less a purely public charity.

A difficult question frequently confronting the courts is: How much of the property of an institution concededly of purely public charity is exempt from taxation? Under the decisions, only such property as is

actually used for immediate purposes of purely public charity is exempt: Episcopal Academy v. Philadelphia et al., 150 Pa. 565 (1892); The Contributors to the Pennsylvania Hospital v. The County of Delaware et al., 169 Pa. 305 (1895); White et al. v. Smith, supra; Ivy Hill Cemetery Company's Appeal, supra. Until the property has begun to be used in this manner, it is taxable: Philadelphia v. Jewish Hospital Assn., 148 Pa. 454 (1892); Johnson et al. v. Delaware County et al., 82 Pa. Superior Ct. 285 (1923); Dougherty v. City of Philadelphia et al., 112 Pa. Superior Ct. 570 (1934). But the charitable uses need not be for every instant of the year. If the property is devoted regularly and continually to purposes which render it exempt, no taxes may be levied, since "It is the character of the use, not the amount of it that determines the title to exemption": The Contributors to the Pennsylvania Hospital v. The County of Delaware et al., supra, at page 309.

But the problem of duration of the user is not nearly so difficult as that of the character of the user. As a general matter, the use, if immediately for the purposes of purely public charity, results in exemption, even though the income, if any, is applied to the reduction of expense; if the use is mediately or indirectly for charitable objects, there is no exemption. See, generally, Philadelphia v. Woman's Christian Assn., 125 Pa. 572 (1889), and County of Northampton v. Lafayette College, 128 Pa. 132 (1889), Episcopal Academy v. Philadelphia et al., supra, Philadelphia v. Pennsylvania Hospital for the Insane, 154 Pa. 9 (1893), The Contributors to the Pennsylvania Hospital v. The County of Delaware et al., supra, Barnes Foundation v. Keely et al., 314 Pa. 112 (1934), Mercersburg College v. Mercersburg Borough, 53 Pa. Superior Ct. 388 (1913), and The United Presbyterian Women's Association of North America v. The County of Butler et al., 110 Pa. Superior Ct. 116 (1933). This is also applicable

to institutions of religious worship: Philadelphia v. Barber, supra; Penial Holiness Association's Appeal, 29 Dist. R. 488 (1919). So, if the institution's property is used directly for profit in a money-making business in competition with private enterprise, even though the profit is thereafter devoted to ends of purely public charity, the property is liable to taxation: Appeal of the Wagner Free Institute of Science, 116 Pa. 555 (1887); Mercantile Library Co. v. The City of Philadelphia et al., 161 Pa. 155 (1894); American Sunday School Union v. City of Philadelphia et al., 161 Pa. 307 (1894); Philadelphia v. Overseers of Public Schools, 170 Pa. 257 (1895); Dougherty v. Philadelphia et al., 314 Pa. 298 (1934); Pocono Pines Assembly et al. v. Monroe County, 29 Pa. Superior Ct. 36 (1905); Christian Association of University of Pennsylvania v. City of Philadelphia et al., 75 Pa. Superior Ct. 516 (1921).

The exemption of the property of an institution of purely public charity extends not only to the main lot and buildings, but, under the statute, also to "grounds thereto annexed and necessary for the occupancy and enjoyment of" the institution. "Annexed ground" is not exempt unless "necessary" for the occupancy and enjoyment of the central property of the institution: Thiel College v. The County of Mercer, 101 Pa. 530 (1883). The necessity need not be absolute, but merely reasonable in the judgment of the managers of the institution, the word "necessary" being interpreted to mean "convenient and useful" for the immediate performance of purposes of purely public charity: Barnes Foundation v. Keely et al., supra; County of Lancaster v. Y. W. C. A. of Lancaster, 92 Pa. Superior Ct. 514 (1928); United Presbyterian Women's Association of North America v. The County of Butler, supra; Foerderer et al. v. City of Philadelphia, 111 Pa. Superior Ct. 328 (1934).

While camp-meeting cases have come before the courts before, they have been decided differently.

Under a statute providing that "all churches, meet-inghouses, or other regular places of stated worship, with the grounds thereto annexed necessary for the occupancy and enjoyment of the same", shall be exempt from all and every tax, "provided, that all property, real or personal, other than that which is in actual use and occupation for the purposes aforesaid, and from which any income or revenue is derived, shall be subject to taxation", it has been held that camp-meeting grounds which are of no greater area than is necessary for the occupation and enjoyment of the association are exempt from taxation, although sufficient income is derived from the leasing of various lots for cottages, and a boarding house, to pay dividends to the stockholders: County of York v. Summit Grove Camp Meeting Assn., 1 Kulp 49.

This case, however, would seem to be overruled by the case of Summit Grove Camp-Meeting Assn. v. School District of the Borough of New Freedom, 12 W. N. C. 103 (1882), which held that the camp-meeting grounds belonging to associations deriving a profit therefrom are not exempt from taxation.

In Luzerne County v. Camp Meeting Assn., 3 Kulp 175 (1884), the court held that only one acre and a half, with the pulpit, auditorium, and tabernacle thereon, were exempt from taxation as places actually used for religious worship and that the residue of the property was subject to taxation.

In Pocono Pines Assembly et al. v. Monroe County, 29 Pa. Superior Ct. 36 (1905), an association was chartered for "the advancement of literary and scientific attainment among the people; the study of the Bible, of the science and art of teaching; and the promotion of general culture in the interest of Christianity." It issued stock, some of which it applied to the acquirement of mountain land upon which various buildings were erected, including an inn, a recitation hall, an auditorium and cottages for lodging purposes. Students

were accommodated at the inn and at cottages at less than regular charges. The public were accommodated at the inn at the rates usually charged by similar resorts in the locality. The cottages were rented to the public at reasonable rents. The profits made were applied to the general charitable work of the association. The Superior Court held that so much of the property of the association as was used for making a profit was liable to taxation.

In The Central Pennsylvania Bible Conference Society of the United Evangelical Church v. Union County, 24 Dist. R. 392 (1914), where the facts were strikingly similar to the facts of the case at bar, the court said (p. 395) :

"It is contended that this association is exempt from taxation, first, because its property is a regular place of stated worship, and, secondly, because the association is a purely public charity. Much reason and authority can be assigned to sustain the first position, but the association falls more directly under the head of a purely public charity, and on this ground it is exempt from taxation."

In Penial Holiness Association's Appeal, 29 Dist. R. 488 (1919), where the facts were also quite similar to those of the case at bar, the court held that the property was exempt from taxation as an actual place of religious worship.

See, generally, on institutions of purely public charity, the two recent cases of Parmentier et al., Trustees', Appeal, 139 Pa. Superior Ct. 27 (1940), and Dougherty v. Philadelphia et al., 139 Pa. Superior Ct. 37 (1940).

Under the evidence and the law, all the real property of this corporation, which is actually used for immediate purposes of purely public charity, is, therefore, exempt. The remaining six acres are subject to taxation.

And now, August 21, 1941, for the foregoing reasons, the appeal of the Eastern District Council of the As-

semblies of God is hereby sustained, and its real estate in Marlborough Township should be exempt from taxation, except six acres of the recreational and parking area.